Howey, J.,
delivered the opinion of the court:
Plaintiff sues to recover from the United States the sum of $1,599 for pay at $7 a day, Sundays excepted, and for per diems in lieu of subsistence at $8 per day, under the circumstances set forth in findings which the court has made and placed on file with the record of this cause.
Under and by virtue of section 8152 of the Bevised Statutes, as amended by the Act of March 1, 1879, Supp. R. S., vol: 1, p. 223, plaintiff was authorized to execute and perform all the duties of an agent of the Government in the Internal-Bevenue Service during the pleasure of the Commissioner of Internal Bevenue and to receive in payment therefor $7 per day for such time as he might be actually employed in such duties, together with his just and proper traveling expenses. Expenditures of travel were subsequently fixed bjr the commissioner. The employment was to be temporary, and that fact so appeared in the warrant of employment pending the issuance, by the Civil Service Commission of a reinstatement certificate under the second proviso of the ninth rule relating to reinstatements. The warrant of employment distinctly stated that plaintiff’s authority and right to serve was for and during the pleasure of the commissioner.
During the year 1905 plaintiff was assigned to duty in the Cincinnati, Ohio, division and performed the work assigned *3 to him. But the act of August 15, 1876, making appropriations for the legislative, executive, and judicial expenses of the Government contained the following proviso, to wit:
“ That in making any reduction of force in any of the executive departments the head of such department shall retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors.” (19 Stat, 169.)
While in the performance of his duties under the temporary warrant of employment plaintiff was relieved from duty. He waited for orders at Cincinnati until August 14, 1905. Not receiving orders, he left for his legal residence in Iowa, where he remained awaiting orders until August 17, 1905, when he went to Nebraska. He remained there until September 2, 1905, awaiting orders and making up his pay accounts. Some time in October plaintiff was charged with incompetency, inefficiency, and a failure to properly perform the duties of revenue agent, to which he had been assigned. Notice was given to him that any defense that he proposed to make to the charges should be placed in the hands of the Commissioner of Internal Revenue within 10 days from the date of the notice. Thereupon protest was made on the ground that the record would show good work had been done, but stating that the health of plaintiff had been impaired by malarial poison contracted in line of duty and during his service at New Orleans, La., on account of which plaintiff said “ he should be entitled to some consideration.” Soon thereafter plaintiff was informed that his warrant of employment was revoked.
Plaintiff’s contentions are that the telegram of the Commissioner of Internal Revenue dated August 12, 1905, did not revoke his appointment, but, in effect, placed him on waiting orders, and that consequently the order did not have the effect of taking him out of the public service; that so long as he was in the service with legal title to his office he was legally entitled to the compensation fixed by law; and finally he relies upon the proviso to the act of August 15,1876, making appropriations for the legislative, executive, and judicial expenses of the Government, which provided that *4 in making any reduction of force in any of tbe executive departments the head of such department should retain those persons who were equally qualified, but who had been honorably discharged from the military or naval service of the United States and the widows and orphans of deceased soldiers and sailors. (19 Stats., 169.)
Defendants’ contentions are that inasmuch as the warrant of appointment of plaintiff to the Internal-Revenue Service operated to continue him in office during the pleasure of the commissioner such warrant was revocable at the pleasure of that officer. Defendants conclude their defense with the statement that whether the telegram relieving the plaintiff from duty was a dismissal from the service or merely placed him on waiting orders the court must decide from an inspection of the telegraphic order itself; or whether the custom of placing a person thus suspended by order of the commissioner on waiting orders and allowing him pay and per diem in lieu of subsistence if absent from the incumbent’s legal residence be in accordance with law and binding upon the United States.
The power to appoint carries the power to dismiss. The authorities on this proposition are too numerous to cite.
Section 3152 of the Revised Statutes of the United States was'amended in 1815 in the following words:
“ The Commissioner of Internal Revenue may, whenever in his judgment the necessities of the service so require, employ competent agents, not exceeding at any time thirty-five in number, to be paid such compensation as he may deem proper, not exceeding in the aggregate any appropriation made for that purpose; and he may, at his discretion, assign any such agent to duty under the direction of any officer of internal revenue, or to such other special duty as he may deem necessary.” (1 Supp. R. S., 223.)
Thus it will be seen that the power of appointment rested with the Commissioner of Internal Revenue. The power to dismiss followed as the necessary sequence.
By the express terms of the warrant of employment plaintiff was entitled to a per diem for such time, and for such time only, as he was actually employed in the discharge of the duties of the position to which he was appointed. *5 From the time of his suspension up to the date of the ratification of his warrant he was not actually engaged in duty for the Government. Nor was he either actually or constructively employed in the business of the Government. The petition shows on its face that plaintiff waited in Cincinnati for orders until about the middle of August. In two days after being notified of his suspension he seems to have left Cincinnati for his residence in Iowa. From thence he went to Nebraska to await orders. According to the record, he proceeded from there to California, where, it-appears, his family happened to be. Plaintiff did nothing during the period between his suspension and the ratification of his warrant except to make up pay accounts from August 14,1905, to the date he was actually paid.
The Government does not contract to keep its employees in its service if their services are not needed, and the right of the appointing power to dismiss at discretion exists with no general supervising power in the courts to review the exercise of such authority. An employee can not recover compensation from the time the appointing power furloughs him, if the furlough be without pay, to the time the employee be restored to duty. These questions were presented to the court and reviewed by the writer, delivering the opinion of the court in Stillings v. United States. 41 C. Cls. R., 61. It was declared in that opinion that the principles set forth were founded upon the rule declared in United States v. Murray, 100 U. S., 536, where it was held that there was nothing to prevent the head of a department from putting an employee on furlough without pay at any time when the exigencies of the service required it, and that if an employee were dismissed absolutely it was difficult to see why such an employee could not be furloughed without pay.
In Medkirk v. United States, 45 C. Cls. R., this writer recently declared for the court that this power of appointment and removal is discretionary in character and without specific authority such power can not be delegated, and that the interposition of the courts with the performance of the ordinary duties of an executive department is not within the power of the court.
*6 In the present case the order of the officer who had appointed the plaintiff and whose orders removed him was within the discretion of the Commissioner of Internal Revenue. It was in the regular course of business and was the legal equivalent of the removal of the discharged employee just as if the highest appointing authority had ordered the discharge of the employee, because the law had vested the power of removal as well as of appointment in the officer who directed the order of discharge.
The frequency with which the proviso to the act of August 15, 1876, supra — which limits the preference in the matter of removals to those in the civil service — leads the court again to advert to what this court has heretofore decided on that subject. We held that the proviso to that act is not mandatory and that acts done under it by administrative officers are not the subject of judicial determination. Keim v. United States, 33 C. Cls. R., 174. In affirming the decision of this court in Keim’s case, the Supreme Court of the United States declared that Congress had generously provided for the discharge of the obligations of faithful service rendered by the Army and Navy in a system of pensions more munificent than ever before known in the history of the world; but that it would be an insult to the intelligence of Congress to suppose that it contemplated any degradation of the civil service by the appointment to or continuance in office of incompetent or inefficient clerks simply because they had been honorably discharged from the military or naval service. And, finally, it was held by the appellate tribunal that the administrative officers charged with the authority must investigate and settle for themselves the matter of actual work done by various employees by a comparison of one with another as to competency and attention to duty.
It ought to go without saying that the appointing power in making removals should act in good faith in giving preference to the honorably discharged in the matter of equal qualifications. That is the personal right of those named in the proviso of the act of 1876, where, in comparison with others, such persons are equally qualified to do the clerical work of the Government. But the duty to the public is equally imperative for the appointing officers to remove such persons *7 wbo may be in the public service where the infirmities of age and general fitness for particular service, as well as competency and attention to duty, are involved. In such cases the necessities of the Government can not be ignored.
Petition dismissed.